***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms with minor modifications the Opinion and Award of the Deputy Commissioner.
 *********** MOTION
Plaintiff's Motion to Reopen the Record and Amend the Prior Opinion and Award, filed on 30 September 2001, is hereby DENIED.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in the Pre-Trial Agreement, which was admitted into the record, and marked as Stipulated Exhibit (1) as:
 STIPULATIONS
1. At all relevant times herein, the parties were subject to, and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times herein, an employee-employer relationship existed between plaintiff and defendant.
3. At all relevant times herein, defendant was duly qualified as self-insured, with Sedgwick Claims Management Services, Inc. acting as its Servicing Agent.
4. Plaintiff's average weekly wage will be determined by an Industrial Commission Form 22 Wage Chart.
5. Plaintiff sustained an injury on or about 24 July 1999, with the exact date to be determined by the Commission.
6. Plaintiff's injury or disease arose out of and in the course of his employment with defendant and is compensable.
 ***********
Based upon the competent evidence of record and the reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Based upon the credible evidence of record, the Full Commission finds that the Industrial Commission has jurisdiction over the subject matter and parties involved in this case, and that all parties are properly before the Commission.
2. At the time of the hearing before the Deputy Commissioner, plaintiff was 35 years old, with his date of birth being 4 February 1967. Plaintiff has completed high school, with no additional specialized education.
3. Plaintiff began working for defendant in 1998 as an edger operator at its Whiteville manufacturing facility. In addition to having experience as an edger operator, plaintiff has worked for defendant pouring slabs, and as a saw house operator.
4. On Saturday, 24 July 1999, plaintiff was working for defendant as an edger operator on a Number Two edger. Another employee was running boards through the edger, while plaintiff was helping to keep the boards straight on the conveyer and watching to make sure the boards did not become jammed. As plaintiff was working, a board came out of the edger and hit him in the nose, knocking him down. Plaintiff immediately reported the incident to his supervisor, Mr. Willy Jamison, and to defendant's safety coordinator, Mr. Larry Slater.
5. On the day of the incident, plaintiff was examined in the emergency room of Columbus County Hospital, where he was diagnosed with having sustained abrasions to the nose and mouth. He was released to return to work without restrictions. On 25 July 1999, plaintiff was not scheduled to work, and he did not seek additional medical care.
6. On 26 July 1999, plaintiff reported to work as scheduled. Following his return to work, plaintiff reported swelling of his nose and severe headaches. Plaintiff was examined by Dr. Richard D. Berry at Whiteville Urgent Care on 9 August 1999. Upon examination, Dr. Berry noted that plaintiff was experiencing bitemporal headaches, nasal drainage, post nasal drip, and a right earache. Dr. Berry diagnosed plaintiff as having sustained a head trauma with sinusitis. Plaintiff was given an injection of Toradol, and prescribed Rocephin, Augmentin, and Zyrtec. Plaintiff was advised not to drive while on these medications, and was removed from work until 16 August 1999. Therefore, plaintiff was temporarily totally disabled from work from 9 August 1999 until 16 August 1999 and is entitled to compensation for one day after deducting the seven day waiting period. The plant shut-down during the same period does not affect plaintiff's eligibility for this compensation under the Act.
7. Plaintiff returned to work for defendant in a light duty position as scheduled on 16 August 1999. Further diagnostic tests revealed that plaintiff had bilateral maxillary sinusitis. Because plaintiff's condition was not resolved, Dr. Berry referred him to Dr. Eric Kenyon, an ear, nose, and throat specialist. Dr. Kenyon first examined plaintiff on 30 August 1999, at which time his symptoms included nasal congestion, rhinitis, periodic sneezing, headaches in the frontal, interorbital, and maxillary regions, and a post nasal drip. Dr. Kenyon ordered a CT scan, the results of which were consistent with inflammatory changes within the bilateral maxillary sinuses, and recommended that plaintiff begin a two-week course of antibiotics, a nasal steroid spray, and decongestant. Dr. Kenyon last examined plaintiff on 25 October 1999, at which time plaintiff continued to complain of headaches. Dr. Kenyon recommended that plaintiff remain on light duty until such time as he could be examined by a neurologist.
8. Plaintiff was examined by neurologist, Dr. David Bachman, on 28 December 1999. At the time of this examination, Dr. Bachman did not have any of plaintiff's medical records to review. Following his examination of plaintiff, Dr. Bachman noted plaintiff's history of a head injury and ongoing head pains, and he opined that plaintiff's symptoms might be neuritic in nature. Due to the fact that plaintiff worked with machinery, Dr. Bachman did not recommend pain management, but instead prescribed Midrin, Motrin 400 and Darvocet, each on a trial basis, to determine which medication provided the most relief without interfering with his alertness. Plaintiff was again examined by Dr. Bachman on 8 February 2000, at which time his history of having sustained a head injury, and experiencing ongoing headaches was noted.
9. In August 2000, plaintiff sought treatment for back pain at Webster Chiropractic Wellness Center. Plaintiff contends that his back symptoms are causally related to the incident occurring on 24 July 1999. Plaintiff received chiropractic treatment until 16 October 2000.
10. Dr. Bachman's medical records of plaintiff from 12 September 2000 also refer to back symptoms, but the records reflect that these were new complaints which Dr. Bachman did not relate to plaintiff's 24 July 1999 injury.
11. On 24 July 1999, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant.
12. Dr. Berry opined that it is "most likely" that plaintiff's 24 July 1999 injury by accident aggravated his sinusitis condition. Additionally, Dr. Kenyon testified that in his opinion and to a reasonable degree of medical certainty, plaintiff's acute sinusitis condition was related to his 24 July 1999 work-place accident.
13. Based upon the credible medical evidence of record, the aggravation of plaintiff's sinusitis condition was causally related to, and the direct and natural result of his 24 July 1999 injury by accident.
14. Both Dr. Bachman, and Dr. Berry have also opined that plaintiff's head condition injury, whether it is neuritic headaches, or post concussion syndrome, is causally related to his 24 July 1999 injury by accident.
15. Based upon the credible medical evidence of record, plaintiff's headaches were causally related to and the direct and natural result of his 24 July 1999 injury by accident.
16. There is insufficient, credible, evidence of record upon which to find that plaintiff's back pain and symptoms first treated in August 2000 were causally related to or the direct and natural result of his 24 July 1999 injury by accident.
17. Since his return to work on 16 August 1999, plaintiff has continued to work for defendant, earning the same or greater wages as at the time of his injury.
18. Based upon the evidence of record, the Full Commission finds sufficient support for the imposition of sanctions pursuant to Rule 802 of the Workers' Compensation Rules in that plaintiff filed a Form 18 Notice of Accident to Employer on 26 October 1999, defendant failed to file either a Form 21 Agreement for Compensation for Disability, a Form 60 Employer's Admission of Employee's Right to Compensation, a Form 61 Denial of Workers' Compensation Claim or a Form 63 Notice to Employee of Payment of Compensation Without Prejudice in response to plaintiff's Form 18 Notice of Accident to Employer as required by N.C. Gen. Stat. §97-18. Further, defendant failed to file a response to plaintiff's Form 33 Request for Hearing as required by Rule 603 of the Workers' Compensation Rules.
19. Defendant's contention that they treated this claim as a "medical only" claim is unpersuasive. This claim does not meet the definition of a "medical only" claim as defined by Industrial Commission Rule 404A. Defendant's failure to admit the claim until the Pre-trial Agreement and their failure to file a Form 33R Response to Request that Claim be Assigned for Hearing prevented plaintiff's counsel from narrowing the issues for hearing to those actually in contention.
19. On 24 July 1999, plaintiff's average weekly wage was $490.21, which yields a compensation rate of $326.97.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 24 July 1999, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2(6). The aggravation of plaintiff's sinusitis condition, and his headaches were causally related too, and the direct and natural result of his 24 July 1999 injury by accident. Plaintiff's back pain and symptoms first treated in August 2000 were not causally related too, nor the direct and natural result of his 24 July 1999 injury by accident.
2. On 24 July 1999, plaintiff's average weekly wage was $490.21, which yields a compensation rate of $326.97. N.C. Gen. Stat. § 97-2(5).
3. Plaintiff was temporarily totally disabled from work from 9 August 2002 until 16 August 2002, and is entitled to indemnity compensation for one day after deducting the seven day waiting period.
4. As the result of his 24 July 1999 injury by accident and the causally related aggravation of his sinusitis condition, and headaches, plaintiff is entitled to have defendant pay for all related medical expenses incurred or to be incurred. N.C. Gen. Stat. §§ 97-25; 97-25.1. Plaintiff is not entitled to have defendant pay for medical expenses associated with his back condition.
5. As a result of defendant's failure to file any responsive Industrial Commission forms as required by statute and rules of the Commission, plaintiff is entitled to the imposition of attorney's fees as a sanction pursuant to Rule 801 and Rule 802 of the Workers' Compensation Rules and N.C. Gen. Stat. § 97-18(d).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff temporary total compensation in the amount of $46.71.
2. Defendant shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of his 24 July 1999 injury by accident and the causally related aggravation of his sinusitis condition, and headaches.
3. Defendant shall pay directly to plaintiff's counsel attorney's fees in the amount of $1,500.00 as sanctions for failure to comply with the Workers' Compensation Rules.
4. Defendants shall pay the costs.
This the ___ day of August, 2003.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN